# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| JANET LOTT, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| VS. | )   Civil Action No: SA-08-CA-0935-XR |
| | ) |
| KENEDY INDEPENDENT SCHOOL | ) |
| DISTRICT, et al., | ) |
| | ) |
|     Defendants. | ) |

## ORDER REGARDING AMENDED MOTION TO DISMISS

This order address the individual defendants' amended motion to dismiss.[1] After considering the motion, the plaintiff's response,[2] the defendants' reply,[3] the pleadings on file, the relevant statutory provisions, and the applicable case authority, the court grants the motion in part and denies the motion in part.

**Nature of the case**. Plaintiff Janet Lott has sued her former employer—Kenedy Independent School District (the school district)—and the four Hispanic members of the school district's board of trustees (the trustees) for various causes of action. Lott's lawsuit arose from the non-renewal of her employment contract as the school district's business manager.[4] Liberally construed, Lott's amended complaint sues the trustees for racial discrimination under 42 U.S.C. §§ 1981, 1983 and four state-law causes of action—intentional infliction of emotional distress,

---

[1]Docket entry # 25.

[2]Docket entry # 32.

[3]Docket entry # 35.

[4]Lott's factual allegations are set out in more detail in the court's orders on the defendant school district's motions to dismiss. *See* docket entry #s 31 & 50.

interference with contractual relationship, common-law retaliation, and defamation. In their amended motion to dismiss, the trustees seek dismissal of Lott's federal claim on qualified immunity grounds and dismissal of her state-law claims on state statutory immunity grounds.

**Applicable standards**. A defendant in a civil action may move to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief may be granted."[5]

> To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[6]

When a public official pleads the affirmative defense of qualified immunity, the burden shifts to the plaintiff to reply to the assertion of qualified immunity in detail with allegations of fact focusing specifically on the conduct of the individual who caused her injury.[7]

**Racial discrimination in employment**. The trustees first ask for dismissal of Lott's federal claim brought against them in their individual capacities. The trustees complain that Lott's original complaint fails to overcome their qualified-immunity defense because Lott failed to allege the violation of a clearly established right or to show that the alleged violation was done in an objectively unreasonable manner.[8]

The examination of a claim of qualified immunity is a two-step inquiry. First, a

---

[5]FED. R. CIV. P. 12(b)(6).

[6]*In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)).

[7]*See Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995).

[8]Docket entry # 25, pp. 2-4.

2

court must determine whether plaintiff has alleged a violation of a clearly established right. Second, the court must determine whether the [official's] conduct was objectively reasonable in light of the legal rules applicable at the time of the alleged violation.[9]

Because Lott responded to the trustees' assertion of qualified immunity, in part, by amending her complaint, the allegations in the amended complaint are the proper focus for this inquiry.

<u>Whether Lott alleged the violation of a clearly established right</u>. Although confusing, Lott's amended complaint is reasonably interpreted as asserting a violation of 42 U.S.C. § 1981. Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ."[10] The language "make and enforce contracts" includes the termination of contracts.[11] Section 1981 covers discrimination in employment[12] and is available to a white/Anglo female like Lott.[13] As such, section 1981 is a clearly established federal right. Having determined that Lott alleged the

---

[9]*Fontenot v. Cormier*, 56 F.3d 669, 673 (5th Cir. 1995).

[10]42 U.S.C. § 1981(a).

[11]42 U.S.C. § 1981(b).

[12]*See Johnson v. Ry Express Agency*, 421 U.S. 454, 459 (1975) (explaining in an employment-discrimination context, that "[d]espite Title VII's range and its design as a comprehensive solution for the problem of invidious discrimination in employment, the aggrieved individual clearly is not deprived of other remedies he possesses and is not limited to Title VII in his search for relief.").

[13]*See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 296 (1976) ("[T]here is no indication that § 1981 is intended to provide any less than the Congress enacted in 1866 regarding racial discrimination against white persons."). A plaintiff complaining about unlawful employment discrimination may enforce her section 1981 right under 42 U.S.C. § 1983 through the Fourteenth Amendment to the United States Constitution. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989) ("Section 1983 provides an explicit remedy in damages which, with its limitations on municipal liability, Congress thought 'suitable to carry . . . into effect' the rights guaranteed by § 1981 as against state actors.") (citation omitted).

3

violation of a clearly established right, the next question is whether Lott alleged conduct that was objectively reasonable in light of the legal rules applicable at the time of the alleged violation.

<u>Whether the trustees' conduct was objectively reasonable</u>.  Liberally construed, Lott's amended complaint alleges that the trustees voted against the renewal of her employment contract based on race—specifically, Lott contends the trustees voted against contract renewal because Lott is white/Anglo and the trustees are Hispanic.[14]  If true, voting against contract renewal was objectively unreasonable because the law prohibiting unlawful employment discrimination was well-established and well-known at the time the trustees voted.  A reasonable trustee would not have believed that race was a proper consideration for an employment decision.  Thus, Lott alleged conduct that was not objectively reasonable.  The trustees are not entitled to dismissal of Lott's federal claim brought against them in their individual capacities because Lott alleged the violation of a clearly established right and because she alleged conduct that was not objectively reasonable.

**The section 1981 claim as pleaded as an official-capacity suit**.  The trustees also argue that they are entitled to dismissal of Lott's federal claim brought against them in their official capacities because the claim is duplicative of the claim brought against the school district. "Official-capacity suits. . . 'generally represent only another way of pleading an action against an

---

[14]Lott also alleges that she was terminated because her husband is Black.  To the extent the trustees question whether this allegation states a claim under section 1981, the court observes that the Fifth Circuit has determined that "[section] 1981 provides a cause of action to a white spouse who alleges that [s]he was discriminated against in employment because of [her] marriage to a nonwhite."). *Alizadeh v. Safeway Stores*, 802 F.2d 111, 114 (5th Cir. 1986).

entity of which an [official] is an agent.'"[15]  "[A] plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself."[16]  Here, the trustees represent the school district.  Lott sued the school district for race discrimination under section 1981.[17]  Because she sued the school district for the same claim, the trustees are entitled to dismissal of the federal claim brought against them in their official capacities.

**Lott's state-law claims**.  The trustees also seek dismissal of the state-law claims brought against them.  The trustees observe that Lott's amended complaint is unclear about the capacity in which they have been sued for the state-law claims.  The complaint seems to indicate that Lott seeks to sue the trustees in their individual <u>and</u> official capacities for intentional interference with contractual relationship because she included the language "in their capacity as members of the Kenedy ISD Board of Trustees" in pleading the cause of action.[18]  The complaint, however, does not specify the capacity in which Lott seeks to sue the trustees for intentional infliction of emotional distress, retaliation or defamation.  No strategic reason exists to sue the trustees in their official capacity for one intentional tort, but not for other applicable intentional torts.  Thus, failing to indicate that Lott seeks to sue the trustees in their official capacities for the latter claims suggests that the inclusion of the language "in their capacity as members of the Kenedy ISD Board of Trustees" in pleading the intentional-interference-with-contractual-relationship claim is a

---

[15]*Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 690, n. 55 (1978).

[16]*Graham*, 473 U.S. at 166.

[17]*See* docket entry # 33, p. 13.

[18]*See id*. at p. 15.

5

drafting error and that Lott seeks to sue the trustees for her state-law claims only in the trustees' individual capacities. The court needs no further clarification of this matter because Lott, as the master of her complaint, is "the person responsible for articulating the facts that give rise to a cognizable claim."[19] The trustees twice questioned the capacity in which Lott seeks to sue them in motions to dismiss,[20] but Lott failed to clarify the matter in her response[21] or to amend her complaint to clearly indicate the capacity in which she seeks to sue the trustees.[22] In the absence of clarification, the court will treat the amended complaint as suing the trustees only in their individual capacities for all state-law claims.[23] For this reason, the court next considers the trustees' argument why they are entitled to dismissal of the state-laws claims brought against them in their individual capacities.

The trustees maintain they are immune from liability for Lott's state-law claims under

---

[19]*Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998) ("But the plaintiff remains the master of his complaint and is, in the end, the person responsible for articulating the facts that give rise to a cognizable claim.").

[20]*See* docket entry # 16, p. 6, § XI & # 25, p. 6, § XI (both motions stating that it is not clear Lott intended to sue the trustees in their official capacities in her fifth, sixth and eighth causes of action).

[21]*See* docket entry # 32 (responding to the trustees' motion to dismiss, but addressing only the trustees' argument about her section 1981 claim).

[22]*See id.*, p. 3 (stating that she amended her complaint to eliminate tort claims and requests for punitive damages against the school district, but saying nothing about clarifying her claims against the trustees).

[23]Lott effectively abandoned her state-law claims against the trustees by failing to address those claims in her response. Although the school district asked for dismissal of the claims, *see* docket entry # 36, p. 5, and although the court stated that it would address the school district's argument when it considered the trustees' amended motion to dismiss, *see* docket entry # 50, p. 3, n. 1, Lott did not address any aspect of her state-law claims in her response.

section 22.0511 of the Texas Education Code.[24] Section 22.0511 provides, in relevant part, that "[a] professional employee of a school district is not personally liable for any act that is incident to or within the scope of the duties of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee . . . ."[25] This provision applies to a school district's trustees.[26] Making decisions about the employment of school district personnel falls within the scope of a school district trustee's duties.[27] Each of the state-law claims allege acts incident to or within the scope of a trustee's duties and involving the exercise of judgment or discretion on the part of the trustee.[28] Although Lott did not dispute the trustees' argument,[29] the following analysis discusses why the trustees are immune from liability for the state-law claims.

Intentional infliction of emotional distress. Lott's intentional-infliction-of-emotional-distress claim alleges that Lott was subjected to a pattern of discrimination and misconduct in the workplace based on her gender and race.[30] She further alleged that she was branded as an

---

[24] Docket entry # 25, p. 7.

[25] Tex. Educ. Code Ann. § 22.0511(a) (Vernon Supp. 2008).

[26] See Tex. Educ. Code Ann. § 22.051(a)(5) (Vernon 2006) (defining who is a professional employee for the purpose of immunity and listing "a member of the board of trustees of an independent school district").

[27] Tex. Educ. Code Ann. § 11.1513 (Vernon Supp. 2008) (requiring the board of trustees to adopt an employment policy for district employees and providing for the acceptance/rejection of the superintendent's recommendation for selection of district personnel). See also id., § 21.912 (requiring the broad of trustees to adopt employment policies for professional positions).

[28] To the extent Lott attempts to argue that the trustees acted in some personal capacity and outside the scope of their duties, Lott merely relies on her subjective belief and conjecture, but this is insufficient to create any fact issue.

[29] See docket entry # 32.

[30] Docket entry # 33, p. 14.

7

unworthy employee and terminated with deliberate indifference to the truth or to her reputation in the community. These allegations arose from the trustee's duty to make decisions about the employment of school district personnel—specifically, whether to renew Lott's employment contract. Section 22.0511 applies to Lott's intentional-infliction-of-emotional-distress claim because the allegations supporting the claim were incident to or within the scope of a trustee's duties to make employment decisions and involved a trustee's exercise of judgment or discretion. Consequently, the trustees are immune from Lott's intentional-infliction-of-emotional-distress claim under section 22.0511.[31] The trustees are entitled to dismissal of Lott's intentional-infliction-of-emotional-distress.

Interference with contractual relationship. Lott's interference-with-contractual-relationship claim alleges that the trustees intentionally induced the school district not to perform its contractual obligations in general and to terminate Lott's employment.[32] Lott complains that the trustees interfered with her employment contract based upon their own self-serving motives, objectives and desires. Like the allegations supporting the intentional-infliction of emotional-distress claim, the allegations supporting the interference-with-contractual-relationship claim arose from the trustees' duty to make decisions about the employment of school district

---

[31]*See Anderson v. Blankenship*, 790 F. Supp. 695, 697 (E.D. Tex. 1992) (determining that school district employee was entitled to judgment as a matter of law because he was immune from liability for the tort claims); *Hammond v. Katy Indep. Sch. Dist.*, 821 S.W.2d 174, 179 (Tex. App.—Houston [14 Dist.] 1991, no writ) (holding that the defendant-employees were immune from liability for the plaintiff's claim for intentional infliction of emotional distress because the plaintiff failed to show that "any of the allegedly tortious acts occurred outside the scope of their employment or that the alleged actions were so egregious that they would cause a person severe emotional distress").

[32]Docket entry # 33, pp. 15-16.

8

personnel—i.e., whether to renew Lott's employment contract. Section 22.0511 applies to the interference-with-contractual-relationship claim because the allegations supporting the claim were incident to or within the scope of a trustee's duties to make employment decisions and involved a trustee's exercise of judgment or discretion. Consequently, the trustees are immune from liability for Lott's interference-with-contractual-relationship claim under section 22.0511.[33] The trustees are entitled to dismissal of the interference-with-contractual-relationship claim.

Common-law retaliation. Lott's retaliation claim alleges that the trustees voted against renewing her employment contract because she provided grand jury testimony against a crony of the trustees.[34] Lott also alleges that the trustees convinced prospective employers not to hire her. Lott characterizes the alleged actions as retaliation. Like the allegations supporting the intentional-infliction of emotional-distress claim and interference-with-contractual-relationship claims, the allegations supporting Lott's retaliation claim arose from the trustees' duty to consider whether to renew Lott's employment contract. Section 22.0511 applies to the retaliation claim because the allegations supporting the claim were incident to a trustee's duties to make employment decisions and involved a trustee's exercise of judgment or discretion. The trustees are immune from liability for Lott's retaliation claim under section 22.0511. They are entitled to dismissal of the retaliation claim.

Defamation. Lott's defamation claim alleges that the trustees falsely stated that Lott was

---

[33] *See Carey v. Aldine Indep. Sch. Dist.*, 996 F. Supp. 641, 656 (S.D. Tex. 1998) (reasoning that school principal was immune from liability for claim arising from giving poor evaluation because "[t]ermination and contract renewal decisions and employee evaluations are duties that require the exercise of a school supervisor's judgment and discretion").

[34] Docket entry # 33, pp. 16-17.

9

employed by a neighboring school district and that Lott performed her other job on the school district's time. This allegation, like the allegations supporting Lott's other state-law claims, arose from a trustee's duty to make decisions about whether to renew Lott's employment contract. Section 22.0511 applies to Lott's defamation claim because the allegation supporting the claim was incident to a trustee's duties to make employment decisions and involved a trustee's exercise of judgment or discretion. The trustees are immune from liability for Lott's defamation claim under section 22.0511.[35] The trustees are entitled to dismissal of Lott's defamation claim.

**Conclusion and court's order**. Having determined that Lott alleged the violation of a clearly established right as well as conduct that was not objectively reasonable, the court DENIES the trustees' motion (docket entry # 25) as to Lott's section 1981 claim brought against the trustees in their individual capacities. The court GRANTS the motion as to Lott's section 1981 claim brought against the trustees in their official capacities and DISMISSES that claim because Lott sued the school district for the same claim.

Because the trustees are immune from liability for Lott's state-law claims brought against them in their individual capacities, the court GRANTS the motion as to the state-law claims and DISMISSES Lott's claims for intentional infliction of emotional distress, interference with contractual relationship, retaliation and defamation.

It is so ORDERED.

SIGNED this 31 day of August, 2009.

---

[35] *See Jones v. Houston Indep. Sch. Dist.*, 979 F.2d 1004, 1007 (5th Cir. 1992) (stating that the school district employees were immune from liability for the plaintiff's libel claim because the circulation of an internal memoranda about the plaintiff's fitness for employment was within the scope of the employees' employment and involved the exercise of judgment and discretion).

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE