IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JANET LOTT, § | | |
| § | | |
| *Plaintiff*, § | | |
| § | | |
| v. § | Civil Action No.  SA-08-CV-935-XR | |
| § | | |
| KENEDY INDEPENDENT SCHOOL § | | |
| DISTRICT; VELMA GARZA, FRANK § | | |
| NIETO, LEO VALERIO, and TONY § | | |
| MEJIA, Individually and in their official § | | |
| capacities as trustees, § | | |
| § | | |
| *Defendants*. § | | |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

On this day came on to be considered Defendants' Motion for Summary Judgment (Docket Entry No. 81). In considering the motion for summary judgment, the Court has also evaluated Defendants' Objections and Motion to Strike Evidentiary Material Attached to Plaintiff's Response (Docket Entry No. 89). Having considered the motions, Plaintiff's responses, Defendants' reply, and admissible evidence, Defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN PART, and Defendants' objection and motion to strike is DENIED IN PART with the remainder being DISMISSED AS MOOT.

**Background**

Plaintiff Janet Lott, a white female, began her employment with the Defendant Kenedy Independent School District ("KISD") in 1991. In January 2002, Lott applied for and was named KISD's interim business manager. She alleges that the district appointed an Hispanic male business manager who resigned after a few months. Lott then took over as the district's business manager.

Lott's contract expired in 2007, and on February 12, 2007, KISD declined to renew her

contract. Defendants Velma Garza, Frank Nieto, Leo Valerio, and Tony Mejia are four Hispanic individuals who served at the time as trustees of the Kenedy Independent School District school board. Although KISD Superintendent Richard Irizarry recommended renewing Lott's contract, Garza, Nieto, and Mejia voted against the renewal.[1] Lott appealed the decision, and on April 10, 2007, Garza, Nieto, Mejia, and Valerio voted against her appeal. Lott's termination became effective on June 30, 2007. A white male replaced Lott as business manager.

Lott claims that the Hispanic trustees and KISD declined to renew her contract and terminate her employment based on her gender (female), her race (white), and her association with her husband who is African American.

## Procedural History

Lott exhausted her administrative remedies and timely filed suit against KISD, Garza, Nieto, Valerio, and Mejia. Lott made a claim for gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; race discrimination under 42 U.S.C. § 1981; 42 U.S.C. § 1983; breach of contract/wrongful termination; intentional infliction of emotional distress; intentional interference with a contractual relationship; retaliation, and defamation. Lott sought a declaratory judgment, injunction, benefits and reinstatement, compensatory damages, punitive damages, court costs and expert witness fees, attorney fees, and pre- and post-judgment interest. Plaintiff's Amended Complaint is the live pleading.[2] Following the Court's orders on Defendants'

---

[1] Valerio abstained while three other trustees, who were white, voted in favor of renewal. The tied vote with one abstention meant that KISD would not renew the contract.

[2] Pl.'s Am. Compl., Feb. 1, 2010 (Docket Entry No. 74).

motions to dismiss, the remaining claims are: (1) a claim of racial discrimination in violation of Title VII, 42 U.S.C. § 2000e, against KISD; (2) a claim of gender discrimination in violation of Title VII, 42 U.S.C. § 2000e, against KISD; (3) a claim of racial discrimination in violation of 42 U.S.C. § 1981 against KISD; and (4) claims against the individual defendants in their individual capacities for violations of 42 U.S.C. § 1981 pursuant to 42 U.S.C. § 1983 for racial discrimination.[3]

Defendants moved for summary judgment[4] and Plaintiff has responded.[5] In their reply, Defendants moved the Court to strike certain evidentiary materials attached to Plaintiff's response to the motion for summary judgment.[6]

## Legal Standard

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson*, 477 U.S. at 248; *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). A fact is 'material' if its resolution in favor of one party might affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002).

---

[3] See Order, Aug. 31, 2009 (Docket Entry No. 54); Order, July 6, 2009 (Docket Entry No. 50); Order, Feb. 24, 2009 (Docket Entry No. 31).

[4] Def.s' Joint Mot. for Summ. J., Mar 1, 2010 (Docket Entry No. 81).

[5] Pl.'s Resp. to Def.s' Joint Mot. for Summ. J., Mar. 15, 2010 (Docket Entry No. 84).

[6] Objections & Mot. to Strike the Evidentiary Materials Attached to Pl.'s Resp. to Def.s' Mot. for Summ. J. & Reply Thereto, Mar. 29, 2010 (Docket Entry No. 89).

The burden is on the moving party to show that "there is an absence of evidence to support the nonmoving party's case." *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the moving party meets its initial burden, the nonmoving party "must . . . set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e); *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994). The Court reviews all facts in the light most favorable to the non moving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009). However, "a summary assertion made in an affidavit is simply not enough proof to raise a genuine issue of material fact." *Id.* (citing *Hibernia Nat'l Bank v. Carner*, 997 F.2d 94, 98 (5th Cir. 1993).

**Analysis**

A.   *Lott's claim that KISD violated Title VII for racial discrimination*

Under Title VII, it is unlawful for an employer to discharge an individual based on that individual's race. 42 U.S.C. § 2000e-2(a)(1). In addition to discrimination against an individual for his or her own race, Title VII "prohibit[s] discrimination against an employee on the basis of a personal relationship between the employee and a person of a different race." *Floyd v. Amite County Sch. Dist.*, 581 F.3d 244, 249 (5th Cir. 2009). The plaintiff may present a case for discrimination by direct or circumstantial evidence, or both. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002). The Fifth Circuit Court of Appeals has stated:

> If the plaintiff produces direct evidence that discriminatory animus played a role in the decision at issue, the burden of persuasion shifts to the defendant, who must prove that it would have taken the same action regardless of discriminatory animus. If the plaintiff produces only circumstantial evidence of discrimination, the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green* guides our inquiry.

*Id.* (citation omitted). Under the framework established by *McDonnell Douglas Corp. v. Green*, the

initial burden to prove a prima facie case of discrimination falls upon the plaintiff. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In general, to satisfy this requirement, a plaintiff must demonstrate the following: (1) she is a member of a protected class; (2) she possessed the required qualifications for employment in her position; (3) despite her qualifications, she suffered an adverse employment action; and (4) that a member of another class who was similarly situated was treated more favorably. *Id.*; *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001). Once a plaintiff has demonstrated a prima facie case of discrimination, the burden then shifts to the defendant to demonstrate that the disputed actions were based upon legitimate and non-discriminatory reasons. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Okoye*, 245 F.3d at 512. Finally, if the defendant produces such reasons, the burden shifts back to the plaintiff to demonstrate that said reasons were merely pretexts for discrimination. *McDonnell Douglas*, 411 U.S. at 804; *Okoye*, 245 F.3d at 512. At this stage, the plaintiff must create a genuine issue of material fact that either (1) the defendant's reason is not true but is a pretext for discrimination or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating reason is the plaintiff's protected characteristic. *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005) (quoting *Rachid*, 376 F.3d at 312).

Plaintiff presents a comment by Defendant Velma Garza that would show direct evidence of discrimination against Lott.[7] Garza is one member of the seven-member KISD Board of Trustees. An improper motive of one member does not impart discrimination on the entire Board. *See Russell v. Univ. of Tex. of Permian Basin*, 234 Fed. Appx. 195, 203 (5th Cir. 2007) (stating that plaintiff did

---

[7]For a discussion of Garza's comment, *see infra* Part D.1.

not show that board chairman's discriminatory animus influenced other board members). Under the "cat's paw" analysis involving the imputation of an individual's racial animus to a decisionmaker, "[i]f the [plaintiff] can demonstrate that others had influence or leverage over the official decisionmaker, and thus were not ordinary co-workers, it is proper to impute their discriminatory attitudes to the formal decisionmaker." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000). "To invoke the cat's paw analysis, [a plaintiff] must submit evidence sufficient to establish two conditions: (1) that a co-worker exhibited discriminatory animus, and (2) that the same co-worker 'possessed leverage, or exerted influence, over the titular decisionmaker.'" *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 653 (5th Cir. 2004) (quoting *McKinney Hosp. Venture*, 235 F.3d at 227). One member of the board could not exercise ultimate employment decisions over Plaintiff's employment. Given that Garza alone could not decline to renew Lott's contract or deny her grievance, the Court will utilize the cat's paw test in this situation. Plaintiff has provided evidence that Garza exhibited discriminatory animus. Three of the four individual defendants opposed renewing Lott's contract (one abstained) and the four individual defendants opposed her grievance. Therefore, Garza must have possessed influence or exerted influence over Nieto and Mejia in their decision to not renew Lott's contract and deny her grievance and she must have also possessed influence over Valerio in his decision to deny Lott's grievance. Plaintiff has not provided evidence to show that Garza exercised control over the board or was the singular degree of influence necessary for finding that either the Board as a unit or a majority of the Board engaged in direct discrimination against Lott.[8]

---

[8] *Cf. Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 787 (2d Cir. 2007) (denying motion for summary judgment because plaintiff had presented evidence that majority of board members had acted with racial animus); *Barbano v. Madison County*, 922 F.2d 139, 142 (2d Cir. 1990) (stating

Given that Plaintiff presents no admissible direct evidence of discrimination, the Court will utilize the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green* to guide its analysis. Defendants move for summary judgment, arguing that Lott cannot establish the fourth prong to show a prima facie case of racial discrimination, *i.e.*, that a member of another class who was similarly situated was treated more favorably. (Mot. at 8–10.) They further argue that even if Lott could establish a prima facie case of discrimination, KISD had legitimate, non-discriminatory reasons for its decision to not renew her contract. (*Id.* at 10.) In response, Lott admits that she was replaced by Gary Lofthouse, a white male. (Resp. at 4.)

Lott's admission precludes her from establishing a prima facie case of racial discrimination. Plaintiff is a white individual who was replaced by another white individual. As a result, she cannot establish a prima facie case that she suffered discrimination based on her race.

With regard to Plaintiff's race discrimination claim based on her marital relationship to an African American, none of Lott's allegations establish whether her replacement's personal relationships differed from her personal relationship or that others similarly-situated but not involved in an interracial or inter-ethnic relationship were provided favorable treatment. In any case, assuming that Lott's replacement was not involved in an interracial or interethnic relationship, Lott would establish a prima facie case for discrimination. KISD responds that it declined to renew Lott's contract on the grounds that (1) she accepted a receipt for reimbursement that had been altered by

---

that animus by one board member does not establish discrimination by Board unless evidence shows otherwise).

Plaintiff relies on a self-selected list of votes to declare that the named Defendants engaged in block voting along ethnic lines. Although disputed by Defendants, even if the Court were to accept this list as true, it would only provide evidence of block voting along ethnic lines and not that Garza exercised control over the block, much less exercised control over the block with a discriminatory motive specific to Lott.

a teacher who took students to a restaurant that board members felt was inappropriate, (2) board members lost confidence in Lott upon the belief that she was sharing information with a board member who was part of a rival faction, (3) board members were told that she had treated some employees rudely, (4) board members (mistakenly) believed that she gave raises to subordinates that had not been approved, (5) Lott was failing to follow the directions of the Superintendent (in spite of the fact that he recommended the renewal of her contract), and (6) Lott did not always know the answers to questions presented at board meetings.

Lott argues that at the time of her dismissal, KISD's board members did not provide her with any reason for their vote or a legitimate, non-discriminatory reason for not renewing her contract. The burden is now on Lott to create a genuine issue of material fact that either (1) KISD's reasons are not true but pretexts for race discrimination based on her marriage to an African-American or (2) that KISD's reasons, while true, are only some of the reasons for its conduct, and another motivating reason is the plaintiff's protected characteristic. Lott, however, fails to present sufficient summary judgment evidence that the reasons proffered by the District were pretexts for discrimination based on her personal relationship. "Unsubstantiated and subjective beliefs and conclusory allegations and opinions are not competent summary judgment evidence." *Bugos v. Ricoh Corp.*, No. 07-20757, 2008 WL 3876548, at *2 (5th Cir. Aug. 21, 2008) (citing *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Tex. Dep't of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996)). The evidence does not demonstrate a motive for or discriminatory conduct by the District based on Lott's association with her husband who was of a different race. As a result, Lott cannot pursue her claim for discrimination based on her association with her husband against KISD.

B.   *Lott's claim that KISD violated Title VII for sex discrimination*

Under Title VII, it is unlawful for an employer to discharge an individual based on the individual's gender. 42 U.S.C. § 2000e-2(a)(1). Courts analyze a claim for sex discrimination using the framework of *McDonnell Douglas Corp. See Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). Lott presents a prima facie case for sex discrimination. She is a woman with the requisite qualifications for her position whose employment was terminated, and she was replaced by a man. KISD provides non-discriminatory reasons for its decision to decline to renew Lott's contract.[9]

Lott argues that at the time of her dismissal, KISD's board members did not provide her with any reason for their vote or a legitimate, non-discriminatory reason for not renewing her contract. Evidence regarding Lott's replacements bolsters the fourth prong of her prima facie case, but it does not refute KISD's proffered legitimate, non-discriminatory reason for not renewing her contract based on her gender. Lott's evidence focuses on refuting non-discriminatory reasons for not renewing her contract based on *racial* discrimination because she is white[10] but does not show that KISD's reasons were pretexts for *sex* discrimination or that sex discrimination was a motivating reason for the district's actions.[11] As a result, Plaintiff has not created a genuine issue of material

---

[9]*See supra* Part A.

[10]As discussed, Lott failed to established a prima facie case for discrimination based on her race. *See infra* Part A.

[11]Plaintiff disputes the non-discriminatory reasons provided by KISD but they are couched in an attempt to demonstrate racial discrimination. Had Plaintiff established a prima facie case for racial discrimination, then the Court could consider her arguments that the non-discriminatory reasons proffered by Defendants were merely pretexts for racial discrimination. Plaintiff, however, did not establish a prima facie case for racial discrimination.

fact to pursue her claim for sex discrimination.

Lott also argues that KISD provided her with inconsistent reasons for her dismissal. At the time she was dismissed, the District and the Board members provided her no reason for not renewing her contract, citing a policy that they need not provide a reason. In their response to the Equal Employment Opportunity Commission, they again did not provide a reason. While Plaintiff questions the lack of reasons provided by the Board members, the lack of reasons provided at the time Lott's contract was not renewed does not establish that gender discrimination motivated their decision.

C.      *Lott's Claim that KISD violated 42 U.S.C. § 1981*

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ."[12] 42 U.S.C. § 1981(a). The language "make and enforce contracts" includes the termination of contracts. *Id.* § 1981(b). Like a claim pursuant to Title VII, a claim under section 1981 also "prohibit[s] discrimination against an employee on the basis of a personal relationship between the employee and a person of a different race." *Floyd*, 581 F.3d at 249. When used as a parallel cause of action to Title VII, section 1981 requires the same proof to establish liability. *Foley v. Univ. of Houston Sys.*, 324 F.3d 310, 316 n.7 (5th Cir. 2003); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 n.2 (5th Cir. 1999). Consequently, Lott is unable to pursue her claim for discrimination in violation of section 1981. Lott was unable to establish the fourth prong to show a prima facie case for racial discrimination, and she did not show that the District's reasons for not renewing her contract were

---

[12]Section 1981 also applies to a white/Anglo individual. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 296 (1976) ("[T]here is no indication that § 1981 is intended to provide any less than the Congress enacted in 1866 regarding racial discrimination against white persons.").

pretexts for discrimination against her based on her association with a person from a different race.

D.     *Claims Against the Individual Defendants*

Section 1981 of Title 42 is a clearly established federal right that Lott may enforce against Valerio, Garza, Nieto, and Mejia pursuant to 42 U.S.C. § 1983. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1976).[13] Defendants move for summary judgment arguing that Lott cannot overcome their claim of qualified immunity. Qualified immunity shields government officials from liability when they are acting within their discretionary authority and their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Flores v. City of Palacios*, 381 F.3d 391, 393–94 (5th Cir. 2004).

In reviewing a motion for summary judgment based on qualified immunity, a district court undertakes a two-step analysis.[14] *Flores*, 381 F.3d at 395. First, a court must determine whether a statutory or constitutional right would have been violated on the facts alleged. *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Aucoin v. Haney*, 306 F.3d 268, 272 (5th

---

[13]In order to sustain a claim under section 1981 against the individual Defendants, Lott must show that (1) she belongs to an identifiable racial group; (2) the individual Defendants intended to discriminate against her on the basis of race; and (3) such discrimination involved an activity enumerated in the statute. *See Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994).

[14]The two-step procedure for determining qualified immunity established in *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), is no longer mandatory. *See Pearson v. Callahan*, -- U.S. ----, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009) ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."). Courts are free to consider the second prong without first deciding whether the facts show a constitutional violation. *Id.* The "decision does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." *Id.* at 821.

Cir. 2002). If no constitutional right would have been violated were the allegations established, then the inquiry ends. *Saucier*, 533 U.S. at 201. If a violation is properly alleged, then the court proceeds to the second step in which it determines whether the defendant's actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores*, 381 F.3d at 395 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)). Finally, if the law was clearly established at the time of the incident, the court must decide whether the defendant's conduct was objectively reasonable. *Aucoin*, 306 F.3d at 272. An official's conduct is objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the conduct violated the Constitution. *Hampton v. Oktibbeha County Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007). Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable. *Hernandez ex. rel. Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 879 (5th Cir. 2004).

Once a government officer pleads the affirmative defense of qualified immunity, the burden shifts to the plaintiff to rebut the defense by establishing that the employee's allegedly wrongful conduct violated clearly established law. *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001). This burden requires the plaintiff to plead "claims of specific conduct and actions giving rise to a constitutional violation." *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996). "[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Mangieri v. Clifton*, 29 F.3d 1012, 1017 (5th Cir. 1994) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)).

Lott argues that the Court has already decided that the Plaintiff provided specific facts to

meet the burden to negate the defense of qualified immunity. Lott pled facts sufficient facts to meet the burden to negate the defense of qualified immunity on a motion to dismiss. Plaintiff now has the burden of presenting evidence to negate the defense of qualified immunity in the context of summary judgment.[15]

1.   Velma Garza

Velma Garza opposed the renewal of Lott's contract and Lott's grievance before the Board. Lott questions the reasons proffered by Garza; however, questioning these reasons alone does not provide the Court with evidence to overcome Garza's claim of qualified immunity.

Lott presents the testimony of Javier Puerto, who has worked done work for Plaintiff's husband.[16] In his testimony, Puerto recounted an encounter with Velma Garza: "I had seen Mrs. Velma Garza at the Diamond Shamrock in Kenedy, and I noticed her picture had been in the newspaper and I asked her what was going on with the school board and Janet Lott, and her response to me was she was going to get rid of that n\_\_\_\_\_-loving b\_\_\_\_ and try to get nothing [but] Hispanics on the school board . . . ."[17] The Fifth Circuit has evaluated racially charged comments

---

[15] Plaintiff questions the reasons presented by the individual Defendants, repeatedly referring to "amnesiac episodes" suffered by Defendants and commenting on their "excuses—everybody has one." Plaintiff's counsel is reminded to adhere to the rules of decorum of the Western District of Texas. *See* L.R. AT-5 (W.D. Tex.) (regarding comments about adverse witnesses).

[16] Defendants object and move to strike this testimony on the grounds that "it consists of no more than irrelevant assertions, inadmissible hearsay, and is replete with conclusions, unsupported facts and other inadmissible or incomplete assertions." (Objections at 3–4.) Defendants arguments are conclusory. Puerto's testimony sheds light on Garza's motive, relates to the issue before this Court, and is admissible testimony pursuant to Federal Rule of Evidence 801(d), which states that the admission of a party opponent does not constitute inadmissible hearsay. Defendants' objection to Puerto's deposition is OVERRULED.

[17] Dep. of Javier Puerto 9:21–10:1, Dec. 15, 2009 (Pl.'s Ex. 3).

and articulated the following test to determine if they rise to the level of discrimination. *Jenkins v. Methodist Hosps. of Dallas, Inc.*, 478 F.3d 255, 261 (5th Cir. 2007). To provide sufficient evidence of discrimination, the comments must be "(1) related [to the protected class of persons of which the plaintiff is a member]; (2) proximate in time to the [complained-of adverse employment decision]; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue". *Id.* (quoting *Patel v. Midland Mem'l Hosp. & Med. Ctr.*, 298 F.3d 333, 343–44 (5th Cir. 2002)). Here, Garza's alleged comment can be attributed to Lott's ethnic status as a non-Hispanic individual and her relationship with a person of a different race. The comment occurred proximate in time to the renewal of Lott's contract. Garza is one of seven individuals who have authority over the employment decision, and it is reasonably related to the end of Lott's tenure with KISD. Garza's alleged comment rises to the level of discrimination.

On the evidence provided, Garza's decision to terminate Lott would violate section 1981. Such activity, if true, would be objectively unreasonable. While Garza denies that this conversation occurred[18], Lott has come forward with sufficient evidence that would overcome Garza's defense of qualified immunity. Lott presents a disputed issue of fact for trial.

2.   Leo Valerio

Leo Valerio initially abstained in the vote on the renewal of Lott's contract and then subsequently voted in opposition to her grievance before the Board. Lott argues that Valerio "vacillated in his deposition testimony as to the reasons for his abstaining and voting as he did; the basic conclusion was 'just because.'" (Resp. at 7.) Lott also points out that Valerio testified that he believed she was undermining the superintendent, a belief not based in fact because the

---

[18]Dep. of Velma Garza 34:1–35;15, Feb. 11, 2010 (Pl.'s Ex. 5).

14

superintendent recommended that the Board renew Lott's contract. (*Id.*) She also notes Valerio's claim that Lott did not fulfill her duties as business manager even though he did not know the job duties of the business manager. (*Id.*) Plaintiff also presents the testimony of Jacky Lott in which "[Valerio] was telling [Plaintiff] how he grew up poor and how he had worked for the white man."[19]

Lott fails to present evidence to show that Leo Valerio engaged in specific conduct to overcome his defense of qualified immunity. At most, the evidence demonstrates that Valerio is uninformed and that he fails to articulate a clear reason for his actions. Moreover, there is no inconsistency in his abstention during the first vote, in which the question before the Board was whether to renew Lott's contract, and to oppose Lott's grievance, in which the question involved Lott's grievance regarding the outcome of the previous vote. Valerio's comment, even if questionable, fails to demonstrate the specific racial animus required to prove racial discrimination.[20] Lott presents no evidence that Valerio violated any of the Plaintiff's clearly established constitutional rights.

---

[19]Dep. of Jacky Lott 33:3–6, Feb. 16, 2010 (Pl.'s Ex. 4). Defendants object and move to strike this testimony "to the extent that this deposition testimony consists of no more than irrelevant assertions, inadmissible hearsay, and is replete with unsupported facts and other inadmissible or incomplete assertions . . . ." (Objections at 4.) Defendants' arguments are conclusory. Lott's testimony discusses a possible motive of Valerio, relates to the issue before this Court, and is admissible testimony pursuant to Federal Rule of Evidence 801(d), which states that the admission of a party opponent does not constitute inadmissible hearsay. Defendants' objection to page 33 of Jacky Lott's deposition is OVERRULED.

[20]While Valerio's comment may be related the class of person's of which Plaintiff is a member and he shares authority over the employment decision at issue, there is no evidence that it was proximate in time to Lott's adverse employment action or that it was related to the employment action at issue. *See Jenkins v. Methodist Hosps. of Dallas, Inc.*, 478 F.3d 255, 261 (5th Cir. 2007). Moreover, the testimony focuses on the witness's interpretation of the comment rather than how it demonstrated discrimination. *See* Lott Dep. 33:8–10 ("There's nothing wrong with that. I just felt resentment to the white man because he made that comment . . . .").

3.      Frank Nieto

Frank Nieto opposed the renewal of Lott's contract and voted against her grievance before the Board. Lott questions Nieto's proffered reasons for refusing to support the renewal of her contract. (*Id.* at 9–10.) Plaintiff also points to statements in Nieto's deposition in which he acknowledges racial and ethnic discord at KISD. (*Id.* at 10.) Nieto states that actions taken against him by other board members were racist.[21] Lott does not present any specific evidence that would overcome Nieto's claim for qualified immunity. Nieto's comments about racial and ethnic discord on the Board do not demonstrate any specific racial animus that would show he acted in a discriminatory manner against Lott.

4.      Tony Mejia

Tony Mejia voted against the renewal of Lott's contract and against her grievance. Plaintiff questions the reasons provided by Mejia (*id.*) but again fails to provide the Court with specific evidence that would show discriminatory action on his part that would overcome his claim for qualified immunity.

## Defendants' Motion to Strike

Defendants objected and moved to strike evidentiary materials attached to Plaintiff's response to Defendants' motion for summary judgment. Regarding Defendants' general objections to conclusory unsupported assertions or inadmissible evidence, the Court has not considered inadmissible evidence in evaluating Plaintiff's response. Specifically, Defendants objected to Javier

---

[21] *See* Dep. of Francisco Nieto 102:9–106:12, Feb. 16, 2010 (Pl.'s Ex. 9). Nieto testified that a white member of the Board did not "treat the other Anglo members . . . the same way that she treated me." *Id.* at 104:5–9. He also stated that the board was a "hostile environment," which he attributed to racism. *Id.* at 105:1–4. Nieto also testifies that the white members of the board were hostile toward a Hispanic employee. *Id.* at 106:4–12.

Puerto's deposition and Jacky Lott's deposition, and the Court has overruled the objections to the portions relied upon by the Court. *See supra* note 15 & 18. Defendants' motion to strike is therefore DENIED IN PART with the remainder being DISMISSED AS MOOT.

## Conclusion

Defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN PART. Defendants' objections and motion to strike evidentiary material is DENIED IN PART with the remainder being DISMISSED AS MOOT.

Plaintiff has failed to establish a prima facie case for race discrimination in violation of Title VII or 42 U.S.C. § 1981 against Kenedy Independent School District. Moreover, her arguments against the District's non-discriminatory reasons for not renewing her contract do not show that the District's reasons were a pretext for gender discrimination or discrimination based on her association with a person of a different race. Defendants' motion for summary judgment on Plaintiff's claims against Kenedy Independent School District is granted.

Plaintiff has not overcome the qualified immunity defense of Defendants Valerio, Nieto, and Mejia to pursue her claim that the Defendants violated 42 U.S.C. § 1981 pursuant to 42 U.S.C. § 1983. Defendants' motion for summary judgment on Plaintiff's claims against Defendants Valerio, Nieto and Mejia is granted.

Plaintiff has, however, presented a genuine issue of material fact to pursue her case against Defendant Garza regarding the same claims. Defendants' motion for summary judgment on Plaintiff's claim that Defendant Garza violated 42 U.S.C. § 1981 pursuant to 42 U.S.C. § 1983 is denied.

It is so ORDERED.

SIGNED this 16th day of April, 2010.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE